**KJC LAW GROUP, A.P.C.**
Kevin J. Cole (SBN 321555)
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
Telephone: (310) 861-7797
e-Mail: kevin@kjclawgroup.com

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT TAULER, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> RECORD PRESS, INC., a New York domestic business corporation; and DOES 1 to 10, inclusive, <br><br> Defendants. | CASE NO. <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA's RESTRICTIONS ON UNSOLICITED COMMERCIAL E-MAIL (Bus. & Prof. Code § 17529.5)** <br><br> (***JURY TRIAL DEMANDED***) |

CLASS ACTION COMPLAINT

# NATURE OF ACTION

1. Plaintiff Robert Tauler ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, due to the illegal actions of Defendant Record Press, Inc. ("Defendant") in knowingly and/or willingly engaging in the unlawful practice of advertising in false and deceptive unsolicited commercial e-mails ("spams") in violation of California Business & Professions ("Bus. & Prof.") Code § 17529.5 ("Section 17529.5").

2. In 2003, the California Legislature found that "[r]oughly 40 percent of all e-mail traffic in the United States is comprised of unsolicited commercial e-mail advertisements [] and industry experts predict that by the end of 2003 half of all e-mail traffic will be comprised of spam." Bus. & Prof. Code § 17529, subd. (a).

3. The California Legislature also found that spam e-mails do cause damage and acknowledged the cost of spam in the United States in 2003: "According to Ferris Research Inc., a San Francisco consulting group, spam will cost United States organizations more than ten billion dollars ($10,000,000,000) this year, including lost productivity and the additional equipment, software, and manpower needed to combat the problem. California is 12 percent of the United States population with an emphasis on technology business, and it is therefore estimated that spam costs California organizations well over 1.2 billion dollars ($1,200,000,000)." *Id.*, subd. (d).

4. However, since the California Legislature declared its findings regarding the cost of spam in 2003, the actual cost has increased dramatically. In 2012, for example, the Journal of Economic Perspectives published an academic paper which estimated that e-mail spam cost American businesses and consumers roughly $20 billion annually. *See* Rao, Justin M., and David H. Reiley. 2012. "*The Economics of Spam*." Journal of Economic Perspectives, 26 (3): 87–110.

5. As of November 2018, spam e-mail messages accounted for 54.3 percent of the total e-mail traffic worldwide. *See* Symantec Corporation, *Monthly Threat Report* (December 2018).

6. Plaintiff brings this Complaint, individually and on behalf of the putative Class, against Defendant for advertising in at least two unsolicited commercial e-mails[1] (i.e., "spams") sent to Plaintiff's California e-mail address beginning on or about August 15, 2024.

7. The spam e-mails sent by Defendant materially violated Bus. & Prof. Code § 17529.5, subd. (a)(3) because they contain subject lines that are likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the content or subject matter of the e-mail. *See*, *e.g.*, *Balsam v. Trancos, Inc.*, 203 Cal.App.4th 1083, 1102–03 (2012) (California's "anti-spam" legislation is not preempted by the federal CAN-SPAM Act of 2003 where the communication is deceptive in nature). The spams involve deception as to a material matter—the actual purpose of the e-mail (i.e., to convince attorneys like Plaintiff to hire Defendant for its "superior appellate consulting, printing, and litigation support," *see* https://recordpress.com/).

8. Defendant sent each of its illegal spam e-mails to a California e-mail address.[2]

9. Plaintiff never gave "direct consent"[3] as required by Bus. & Prof. Code § 17529.1, subd. (d) to receive commercial e-mail advertisements from, nor did he have a

---

[1] "Unsolicited commercial e-mail advertisement" means that the recipient has not provided direct consent to receive advertisements from the advertiser and does not have a preexisting or current business relationship, as defined by subdivision (l), with the advertiser promoting the lease, sale, rental, gift, offer or other disposition of any property, goods, services, or extension of credit. *See* Bus. & Prof. Code § 17529.1, subd. (o)(1)–(2).

[2] "California electronic mail address" or "California e-mail address" means any of the following: (1) an e-mail address furnished by an electronic mail service provider that sends bills for furnishing and maintaining that e-mail address in this state; (2) an e-mail address ordinarily accessed from a computer located in this state; or (3) an e-mail address furnished to a resident of this state. *See* Bus. & Prof. Code § 17529.1, subd. (b).

[3] "Direct consent" means that the recipient has expressly consented to receive e-mail advertisements from the advertiser, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative. Bus. & Prof. Code § 17529.1, subd. (d).

"preexisting or current business relationship"[4] pursuant to Bus. & Prof. Code § 17529.1, subd. (l), with Defendant.

10. Spam recipients are not required to allege or prove reliance or actual damages to have standing. *See* Bus. & Prof. Code § 17529.5, subd. (b)(1)(A)(iii). Nevertheless, Plaintiff did suffer damages by receiving the spams. *See*, *e.g.*, Bus. & Prof. Code § 17529, subds. (d), (e), (g) & (h). However, Plaintiff elects to recover statutory damages only and forego recovery of any actual damages. *See* Bus. & Prof. Code § 17529.5, subd. (b)(1)(B).

11. The unlawful elements of these spams represent willful acts of falsity and deception, rather than clerical errors.

12. This Court should award Plaintiff and the members of the proposed Class liquidated statutory damages against Defendant in the amount of $1,000 per unlawful spam e-mail, as authorized by Bus. & Prof. Code § 17529.5, subd. (b)(1)(B)(ii).

13. This Court should award Plaintiff attorneys' fees pursuant to Bus. & Prof. Code § 17529.5, subd. (b)(1)(C) ("The recipient, an electronic mail service provider, or the Attorney General, if the prevailing plaintiff, may also recover reasonable attorney's fees and costs.").

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen or subject of a foreign state.

15. The Central District of California has specific personal jurisdiction over

---

[4] "Preexisting or current business relationship," as used in connection with the sending of a commercial e-mail advertisement, means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser. Bus. & Prof. Code § 17529.1, subd. (l).

3
CLASS ACTION COMPLAINT

Defendant.

16. Specific jurisdiction over a non-resident defendant exists where: (1) "[t]he non-resident defendant . . . purposefully direct[s] [it]s activities or consummate[s] some transaction with the forum or resident thereof; or perform[s] some act by which [it] purposefully avails [it]self of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;" (2) the claim is one that "arises out of or relates to" the defendant's activities in the forum state; and (3) the exercise of jurisdiction comports with "fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff need only establish the first two prongs, while it is the defendant's burden to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

17. **Purposeful Availment.** Under the first prong of the three-part test, "purposeful availment" includes both purposeful availment and purposeful direction, which are two distinct concepts. *Id.* Where a case sounds in tort, as here, courts employ the purposeful direction test. Purposeful direction requires the defendant have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (citing *Schwarzenegger*, 374 F.3d at 802).

18. In determining whether electronic communications are sufficient contacts with the forum state, district courts focus on whether the defendant "knew or should have known" that its communications were sent into California. *Washington Shoe Co. v. A–Z Sporting Goods Inc.*, 704 F.3d 668, 678 (9th Cir. 2012), *abrogated on other grounds by Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017) ("Where [defendant] knew or should have known that [plaintiff] is a Washington company, [defendant's] intentional acts were expressly aimed at the state of Washington."); *Fabricant v. Fast Advance Funding, LLC*, No. 2:17-cv-05753-AB (JCx), 2018 WL 6920667, at *3 (C.D. Cal. Apr. 26, 2018) (finding the plaintiff sufficiently alleged personal jurisdiction where the defendant made unsolicited phone calls to the plaintiff's cell phone

that had a California area code); *Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 3421514, at *3 (N.D. Cal. July 14, 2014) (finding that the defendant expressly aimed its conduct at California where some of the "thousands of similar unsolicited text messages" to the "general public" were sent to cell phones with California based area codes).

19. Here, Defendant purposely directed its conduct toward residents of California by advertising in numerous spam emails sent to California residents, including Plaintiff. At the same time, on information and belief, Defendant transacts or has transacted business in the Central District of California (and throughout the United States). Defendant has created an ongoing relationship in California related to its distribution of spam emails, in order to market its litigation-support services. On further information and belief, Defendant knew or should have known that it was sending spam email advertisements to California residents, including Plaintiff.

20. **Claim Arising Out of Action in the Forum Prong.** Under the second prong of the three-part specific jurisdiction test, personal jurisdiction exists where, as here, the claim "arises out of or relates to" the defendant's activities in the forum state. Courts in the Ninth Circuit use a "but for" test to determine whether the claim "arises out of" the nonresident's forum-related activities. In other words, the test is satisfied if the plaintiff would not have suffered loss "but for" the defendant's activities. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

21. Here, Defendant's contact with the forum—directing unsolicited spam email advertisements to recipients (including Plaintiff) in California (and elsewhere)—is the basis of its Section 17529.5 violations. But for Defendant's contact with the forum, Plaintiff (and the thousands of other individuals who received Defendant's unsolicited messages) would not have suffered harm.

22. **Venue.** Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391 because Defendant:

    a) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District;

    b) does substantial business within this District;

    c) is subject to personal jurisdiction in this District because it has availed itself of the laws and markets within this District; and the injury to Plaintiff occurred within this District.

## PARTIES

23. Plaintiff is now, and at all times relevant has been, an individual domiciled in Los Angeles, California.

24. Plaintiff owns, and at all relevant times has owned, a computer with an Internet connection. This computer is located in the State of California.

25. Plaintiff ordinarily uses this computer to access Plaintiff's e-mail address, rtauler@taulersmith.com.

26. Plaintiff ordinarily accesses his e-mail account from California.

27. Plaintiff is a "recipient" as defined by Bus. & Prof. Code § 17529.1, subd. (m) of "unsolicited commercial e-mail advertisements" as defined by Bus. & Prof. Code § 17529.1, subd. (o).

28. Plaintiff received unlawful unsolicited commercial e-mails (defined above as "spams") linking to Defendant's web page at https://www.recordpress.com/free-estimate/. Plaintiff did not give direct consent to Defendant to send Plaintiff any commercial e-mail advertising.

29. Defendant is a New York domestic business corporation with its principal place of business in New York, New York.

30. At all times material to this Complaint, Defendant has owned and operated the https://recordpress.com/ website. Defendant transacts or has transacted business in California and throughout the United States and has created an ongoing relationship in California related to the distribution of spam e-mails.

31. Defendant is an "advertiser" as defined by Bus. & Prof. Code § 17529.1, subd. (a), with respect to each of the e-mails received by Plaintiff.

32. Plaintiff does not know the true names or capacities of the persons or entities

sued as DOES 1 to 10, inclusive, and therefore sues such Defendants by such fictitious names. Plaintiff is informed and believes, and upon such information and belief alleges, that each of the DOE Defendants is in some manner legally responsible for the damages suffered by Plaintiff and the Class members as alleged in this Complaint. When the identities of DOES 1 to 10 are discovered, or otherwise made available, Plaintiff will seek leave to amend this Complaint to allege their identity and involvement with particularity.

## THE UNLAWFUL SPAM E-MAILS

33. Plaintiff received at least two spam emails advertising Defendant's website and "superior appellate consulting, printing, and litigation support" at his California e-mail address.

34. The e-mails at issue are "commercial e-mail advertisements" because they advertise business insurance products provided by Defendant at its website, https://recordpress.com/. The e-mails were initiated for the purpose of advertising and promoting Defendant's products or services.

35. The e-mails are "unsolicited commercial e-mail advertisements" because Plaintiff never gave "direct consent" to Defendant to send commercial e-mails.

36. Plaintiff has never had a "preexisting or current business relationship" with Defendant. Nor did Plaintiff "opt-in" to receive e-mails from Defendant.

37. Plaintiff did not consent or acquiesce to receive the spams at issue. Plaintiff did not waive any claims related to the spams at issue.

38. Defendant advertised in, sent, and/or conspired to send at least two unlawful spams that Plaintiff received at his "California e-mail address."

39. The spams are all unlawful because the spams contain misleading Subject Lines, as described in more detail below.

### The Spams Have Subject Lines That Are Materially Misleading Relative to the Contents of the e-Mails, in Violation of Bus. & Prof. Code § 17529.5, subd. (a)(3)

40. Section 17529.5, subd. (a)(3) prohibits Subject Lines that are likely to mislead a reasonable recipient relative to the contents or subject matter of the e-mails.

7
CLASS ACTION COMPLAINT

41. Defendant advertised in spam e-mails that had Subject Lines that are likely to mislead a recipient acting reasonably under the circumstances about a material fact regarding the contents or subject matter of the e-mails.

42. Each of the spams that Plaintiff received contain misleading Subject Lines in violation of Section 17529.5, subd. (a)(3). More specifically, Defendant offers "superior appellate consulting, printing, and litigation support." Plaintiff is the managing partner of a Los Angeles-based litigation boutique called Tauler Smith LLP. Plaintiff has a number of active litigations, including a case entitled *Nora Gutierrez v. Converse Inc.*, 2:23-cv-06547 (C.D. Cal.) (the "*Converse* Case"). The *Converse* Case is now on appeal, which is reflected as Ninth Circuit Appeal Docket No. 24-4797. Given that the *Converse* Case is an active appeal, it is reasonable to expect that Plaintiff—as an attorney handling the appeal—would pay close attention to any emails whose subject line refers to the *Converse* Case (e.g., reasonably believing the e-mail relates to the active litigation).

43. On information and belief, Defendant found Plaintiff's information online and sent at least two spam e-mails with Subject Lines that read "Gutierrez v. Converse Inc., No. 24-4797 (9th Cir)" as demonstrated by the following screenshots:

> From: **Natasha R. Monell, Esq.** <nmonell@recordpress.com>
> Date: Tue, Sep 24, 2024 at 9:00 AM
> Subject: RE: Gutierrez v. Converse Inc., No. 24-4797 (9th Cir)
> To: rtauler@taulersmith.com <rtauler@taulersmith.com>
>
> Counsel,
>
> I am reaching out about the pending appeal. We handle successful filings & e*filings in the Ninth Circuit for firms nationwide.
>
> Our appellate team takes care of these tasks:
> - Prepare cover pages for the Record Excerpts and Appellant's Brief
> - Prepare paginated proof of Record Excerpts with Table of Contents
> - Review of Brief for compliance with the court's rules
> - Generate brief Table of Contents & Authorities
> - Verify word count and draft Certificate of Compliance
> - Prep and E*file Record Excerpts and Brief
> - Print and bind all copies with appropriate color covers
> - File 6 Brief and 3 Record Excerpts paper copies with Ninth Circuit
> - Provide office copies for your records

> **From:** recordpress@quickbaseemail.com <recordpress@quickbaseemail.com>
> **Sent:** Thursday, August 15, 2024 7:39 AM
> **To:** rtauler@taulersmith.com
> **Subject:** Gutierrez v. Converse Inc., No. 24-4797 (9th Cir)
>
> **[CAUTION - EXTERNAL EMAIL]** This email originated outside of Record Press, Inc. Please do not respond, click links or open attachments unless you recognize the source of this email and know the content is safe.
>
> Hello Robert,
>
> Gutierrez v. Converse Inc.
> Docket No. 24-4797 (9th Cir)
>
> We would welcome the opportunity to assist with your pending Appeal.
>
> With over 65 years of industry experience, we provide complete appellate printing and management services.

44. As shown from the screenshots, the e-mails' Subject Line read "*Gutierrez v. Converse Inc.*, No. 24-4797 (9th Cir)," which is materially misleading: it is designed to make the recipient—whom Defendant knows is an attorney of record in the ongoing *Converse* Case—believe they are receiving an e-mail about the active litigation (e.g., from the Court or opposing counsel). Indeed, when Plaintiff received Defendant's e-mail, he reasonably believed it was an update about, or something related to, the *Converse* Case.

45. Instead, these e-mails are nothing but commercial advertisements sent by Defendant, solely so that Defendant can drive Internet traffic to its website with a motive to make a profit. In other words, the spams involve deception as to a material matter—the actual purpose of the e-mail. That is, Defendant sends these e-mails in order to deceive attorneys like Plaintiff into believing they are receiving an important update about ongoing litigation (here, the *Converse* Case). In reality, Defendant is attempting to sell its "superior appellate consulting, printing, and litigation support" to attorneys. The e-mails have *nothing to do with* the recipient attorney's ongoing litigation. *See* https://recordpress.com/.

46. In other words, the spams involve deception as to a material matter—the actual purpose of the e-mail (i.e., to convince attorneys like Plaintiff to hire Defendant for its "superior appellate consulting, printing, and litigation support").

47. These Subject Lines, even when viewed in conjunction with the body of the e-mail, are materially false and deceptive. As a result, they are likely to mislead a recipient acting reasonably about a material fact regarding the content or subject matter of the message.[5]

## No Proof of Reliance or Actual Damages is Necessary Because Plaintiff Sues for Statutory Liquidated Damages

48. The California Legislature set liquidated damages as $1,000 per spam. Bus. & Prof. Code § 17529.5, subd. (b)(1)(B)(ii).

49. Plaintiff is informed and believes, and on that basis alleges, that the $1,000 per spam figure is comparable with damages in other areas of consumer protection law (e.g., $500 to $1,500 in statutory damages per junk fax, pursuant to Business & Professions Code § 17538.43, subd. (b)).

50. Plaintiff's rightful and lawful demand for liquidated damages in the amount of $1,000 per e-mail is necessary to further the California Legislature's objective of protecting California residents from unlawful spam.

51. Section 17529.5 does not require Plaintiff to quantify his actual damages, allege or prove reliance on the advertisements contained in the spams, or purchase the goods and services advertised in the spams. Recipients of unlawful spam have standing to sue and recover liquidated damages. *See* Bus. & Prof. Code § 17529.5, subd. (b)(1)(A)(iii); *Hypertouch*, *supra*, 192 Cal.App.4th at 820, 822–23 & 828.

---

[5] Regardless of whether Defendant or a third-party marketing firm (e.g., an advertisement agency) sent the spams, Defendant is strictly liable. *See* Bus. & Prof. Code § 17529, subds. (j) & (k) ("There is a need to regulate the advertisers who use spam, as well as the actual spammers, because the actual spammers can be difficult to track down due to some return addresses that show up on the display as 'unknown' and many others being obvious fakes and they are often located offshore. The true beneficiaries of spam are the advertisers who benefit from the marketing derived from the advertisements."); *Hypertouch Inc. v. ValueClick Inc.*, 192 Cal.App.4th 805, 820–21 (2011) (holding Section 17529.5(a) "makes an entity strictly liable for advertising in a commercial e-mail . . . regardless of whether the entity knew that such e-mails had been sent or had any intent to deceive the recipient.").

52. However, Plaintiff did suffer damages by receiving the unlawful spams advertising Defendant's products and services in the State of California, at his California e-mail address. Bus. & Prof. Code § 17529, subd. (d), (e), (g) & (h). Regardless, Plaintiff does not seek actual damages in this action, but instead, only liquidated damages. Bus. & Prof. Code § 17529.5, subd. (b)(1)(B).

53. Plaintiff is informed and believes, and on that basis alleges, that Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5.

## CLASS ACTION ALLEGATIONS

54. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of the following classes of persons or entities similarly situated throughout the United States.

55. Plaintiff brings this action for statutory liquidated damages on behalf of himself and all persons similarly situated and seeks certification of the following class:

> All California residents who received a false or deceptive unsolicited commercial e-mail that has a Subject Line likely to mislead a recipient, which advertised Defendant's products or services, since the one year prior to the filing of this action.

56. The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendant, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

57. **Numerosity**. The potential Class members as defined are so numerous and so diversely located throughout California, that joinder of all the Class members is

impracticable. Class members are dispersed throughout California. Joinder of all members of the proposed Class is therefore not practicable. Although Plaintiff does not know the precise number of Class members, due to the nature of the trade and commerce involved, Plaintiff believes that the total number of the members of the Class is in the thousands (e.g., on information and belief, Defendant sends similar spams to thousands of practicing attorneys throughout California).

58. **Ascertainability**. Upon information and belief, Defendant and/or Defendant's agents and affiliates, maintain records of the e-mails they send and the Internet traffic derived from the e-mail advertising at issue. Moreover, members of the Class who received e-mails with the alleged advertisements may be self-identified through their own e-mail records. As a result, the members of the Class are ascertainable through Defendant's records and/or the records of Defendant's agents and affiliates, as well as through public notice. This matter should therefore be certified as a Class Action to assist in the expeditious litigation of this matter.

59. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct because they all received unlawful, unsolicited spam e-mails that contain subject lines likely to mislead a recipient.

60. **Adequacy of Representation**. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and his counsel intend to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interests to those of the Class.

61. **Existence and Predominance of Common Questions of Law or Fact**. Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class,

include, but are not limited to, the following:

    a)    Whether Class members received unsolicited commercial e-mail advertising the website https://recordpress.com/.

    b)    Whether Defendant obtained direct consent to send commercial e-mail to Class members.

    c)    Whether Defendant had no preexisting or current business relationship with Class members.

    d)    Whether the unsolicited commercial e-mails received by Class members have subject lines likely to mislead a recipient acting reasonably under the circumstances.

    e)    Whether the information contained in the e-mail received by Class members is forged, falsified, misrepresented, deceptive, or misleading in violation of Bus. & Prof. Code § 17529.5.

    f)    Whether Defendant is liable under Bus. & Prof. Code § 17529.5 for the actions of its affiliates, advertisers, employees or agents, who sent unlawful spams advertising the website https://recordpress.com/.

62.    **Superiority**. A Class Action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Plaintiff and the Class members have suffered or may suffer loss in the future by reason of Defendant's illegal practices. Certification of this case as a class action will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Certifying this case as a class action is superior because it allows for efficient relief to Class members, and will thereby effectuate California's strong public policy of protecting the California consumer from violations of its laws.

63.    By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented, presents no management difficulties, conserves the resources

of the parties and of the court system, and protects the rights of the members of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

64. Defendant has acted or refused to act on grounds that are generally applicable to the Class so that relief is appropriate to the Class as a whole, making class certification appropriate pursuant.

## FIRST CAUSE OF ACTION

**Violations of California's Restrictions on Unsolicited Commercial e-Mail – California Business & Professions Code § 17529.5 (Against All Defendants)**

65. Plaintiff hereby incorporates the foregoing paragraphs as though set forth in full herein.

66. Plaintiff received the spam e-mails within the one year prior to filing this Complaint.

67. Defendant advertised in, sent, assisted others in sending, conspired to send, contracted with others to send, and/or otherwise caused to be sent at least two unsolicited commercial e-mail advertisements to Plaintiff's California electronic mail address that contained subject lines likely to mislead a recipient, in violation of Bus. & Prof. Code § 17529.5.

68. The unlawful elements of these spam e-mails represent willful acts of falsity and deception, rather than clerical errors.

69. The California Legislature set liquidated damages at $1,000 per e-mail.

70. Plaintiff seeks reimbursement of reasonable attorneys' fees and costs as authorized by Section 17529.5, subd. (b)(1)(C).

71. The attorneys' fees provision for a prevailing spam recipient is typical of

consumer protection statutes and supported by Code of Civil Procedure § 1021.5. By prosecuting this action, Plaintiff expects to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons. The necessity and financial burden of private enforcement is such as to make the award appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert Tauler prays for relief and judgment in favor of himself and the Class as follows:

### On the First Cause of Action for Violations of Bus. & Prof. Code § 17529.5

A. For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B. For an order declaring that Defendant violated Bus. & Prof. Code § 17529.5, by advertising in and sending unlawful spam e-mails.

C. Liquidated damages against Defendant in the amount of $1,000 per unlawful spam e-mail, as authorized by Bus. & Prof. Code § 17529.5, subd. (b)(1)(B)(ii) for each unlawful e-mail received by Plaintiff and members of the Class.

D. Reasonable attorneys' fees and costs as authorized by Bus. & Prof. Code § 17529.5, subd. (b)(1)(C).

E. Disgorgement of all profits derived from unlawful spams directed to California residents; and monies to be turned over to the Unfair Competition Law Fund and used by the California Attorney General to support investigations and prosecutions of California's consumer protection laws.

F. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

DATED: October 12, 2024

Respectfully submitted,

**KJC LAW GROUP, A.P.C.**

By:    /s/ Kevin J. Cole
        Kevin J. Cole

*Attorneys for Plaintiff and the Proposed Class*